IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TONI L. WERTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 05-1305-CO |
| v. | ) | |
| | ) | |
| LINDA S. McMAHON, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security,* | ) | |
| | ) | |
| Defendant. | ) | |

**RICHARD SLY**
1001 SW 5th Ave. Suite 310
Portland, OR 97204

**LINDA ZISKIN**
3 Monroe Parkway
Suite P, PMB #323
Lake Oswego, OR 97035

      Attorneys for Plaintiff

---

      * On January 20, 2007, Linda S. McMahon became Acting Commissioner of Social Security.  She is substituted as defendant pursuant to Rule 25(d)(1), Fed. R. Civ. P., and 42 U.S.C. § 405(g).

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW 3rd Ave Suite 600
Portland, OR 97204

**STEPHANIE R. MARTZ**
Social Security Administration
701 5th Ave Suite 2900 M/S 901
Seattle, WA 98104

      Attorneys for Defendant

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Toni L. Wertz ("Wertz") brings this action for judicial review of a final decision of the Commissioner of Social Security denying her concurrent applications for disability insurance benefits ("DIB") and supplemental security income payments ("SSI") under Titles II and XVI of the Social Security Act.  The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Rule 73, Fed. R. Civ. P., and 28 U.S.C. § 636(c).  The Commissioner's decision is affirmed and this case is dismissed.

## BACKGROUND

Wertz was born September 12, 1961.  She completed high school and obtained a license to sell real estate and a commercial trucking license.  She worked as an owner and manager of a store that sold auto parts.  She had additional employment experience in other sales positions.  Wertz last worked in April 1999 selling mobile homes.

On April 6, 1999, Wertz was involved in a minor motor vehicle accident in which she was rear-ended while stopped at a traffic signal. There was insignificant damage to the automobiles, limited to paint transference without intrusion of the bumpers. Wertz walked away from the scene to call for help. She went to the emergency room, complaining of neck pain but all diagnostic images were unremarkable.

Wertz alleges disability since the date of the accident due to "post concussion syndrome, head trauma, mild traumatic brain injury, acute somatic dysfunctional cranial, cervical, thoracic and lumbar spine, sacrum, pelvis, upper extremities and rib cage, moderate anterior wedge deformity at T8 and disc space narrowing between T8 and T9." Tr. 156, 163.[2] She alleges these conditions limit her ability to work because of pain and restricted range of motion in the neck, shoulders and back, head pain and difficulties with memory, concentration and focus. Tr. 156.

Wertz's insured status under the Social Security Act expired on March 31, 2004. She must establish that she was disabled on or before that date to prevail on her Title II claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

---

[2]Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R §§ 404.1520, 416.920. Wertz challenges the ALJ's evaluation of the evidence and his conclusion at step five.

For the purposes of step five, the Commissioner must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p.

At step five, the Commissioner must determine whether the claimant can perform any work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ's FINDINGS

The ALJ determined that an anxiety disorder, adjustment disorder with depression, a pain disorder and a history of a cervical strain combine to limit Wertz's ability to perform basic work-related activities.

The ALJ assessed Wertz's RFC as follows:

> The claimant retains the following residual functional capacity to lift and carry twenty pounds on an occasional basis and ten pounds on a frequent basis; can sit, stand and walk at least six hours in an eight hour workday; requires simple 1-2-3 step directions; should avoid a

production line environment; and should have limited interaction with
the general public.

Tr. 36.

The ALJ elicited testimony from an impartial vocational expert (VE) with a hypothetical

question based on the foregoing RFC assessment and vocational factors reflecting Wertz's age,

education and work experience. The VE testified that there were jobs existing in significant numbers

in the economy that such an individual could perform. As examples, the VE identified work as a

motel cleaner and as a dining room attendant. The ALJ concluded that Wertz failed to establish that

she was disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence

means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.*

The ALJ is responsible for determining credibility, resolving conflicts in the medical

evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If

the evidence can reasonably support either affirming or reversing the Commissioner's conclusion,

the court may not substitute its judgment for that of the Commissioner. *Id.* The Commissioner's

decision must be upheld, even if the "evidence is susceptible to more than one rational

interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Wertz challenges the Commissioner's final decision on three grounds. First, she contends the ALJ failed to accurately assess her RFC because he disregarded or rejected medical opinions about her impairments. Second, Wertz contends the ALJ's evaluation of the evidence did not comply with remand instructions issued by the Appeals Council during the administrative proceedings. Third, she challenges the ALJ's finding at step five, claiming the jobs he identified as examples of work she can perform require work functions beyond her RFC.

### I.    RFC Assessment

Wertz contends the ALJ improperly evaluated the opinion of reviewing psychologist Robert Henry, Ph.D., the consultative evaluations of Roderick Calkins, Ph.D., and Mark Mozer, M.D., and a  letter written by Darian Minkanus, M.D.

### A.    Dr. Henry's MRFC

Dr. Henry is a reviewing psychologist for the state disability determination agency. The Commissioner relies on such consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p. Such reviewing sources do not treat or examine the claimant. Therefore, their opinions are held to stricter standards and are given weight only to the extent they are supported by the record and consistent with the record as a whole. SSR 96-6p.

Dr. Henry prepared a standard Mental Residual Functional Capacity Assessment (MRFC) in April 2000. The MRFC is a worksheet on which the reviewing psychologist can rate the severity of a claimant's limitation in 20 work-related functions. Dr. Henry concluded from his review of the record that Wertz was not significantly limited in 12 of the categories, but had moderate impairment

in the other 8 categories. Wertz did not show marked impairment in any area of mental function. Tr. 314-15.

Dr. Henry found Wertz moderately impaired in the ability to interact appropriately with the general public, but not significantly impaired in the ability to ask simple questions, request assistance, accept instructions, respond appropriately to criticism, get along with peers or maintain socially appropriate behavior. Tr. 315. In his narrative commentary, Dr. Henry indicated that he thought Wertz "must have minimal to no interaction with the general public." Tr. 316.

The ALJ assessed Wertz with the RFC to have "limited interaction with the general public." Tr. 39. He described this limitation more fully during the hearing, when he told the VE to assume that the RFC did not preclude all contact with the public but would limit interactions to slight, routine interactions without long, unframed dialogues. Tr. 1448.

The ALJ's conclusion regarding Wertz's limited ability to interact with the public is consistent with Dr. Henry's opinion. Based on the MRFC in its entirety, the ALJ could reasonably conclude that Wertz could come into slight, routine contact with the general public, including asking simple questions, requesting assistance, accepting instructions, responding appropriately to criticism, getting along with peers and maintaining socially appropriate behavior, while avoiding more involved and unstructured interactions.

The ALJ's conclusion is also supported by the record as a whole. Wertz underwent a number of psychological evaluations, and none resulted in findings of greater than moderate limitation in the ability to maintain social function. For example, in May 2000, Dr. Calkins performed a comprehensive psychological evaluation, during which Wertz did not mention difficulties in social functioning and Dr. Calkins did not note any such limitations. Tr. 407-14.

Similarly, in October 2000, Wertz underwent an outpatient mental health assessment at Mt. Hood Mental Health clinic.  She reported a period of depression following a death in her family and difficulty managing stress.  She did not mention difficulties in public interactions.  Tr. 460-63. When Dr. Mozer conducted his evaluation in April 2001, Wertz endorsed memory problems and difficulty concentrating, but did not mention difficulty in social function.  Dr. Mozer found other deficits but did not note problems in social interactions.  Tr.  437-41.

In April 2002, Cheryl Brischetto, Ph.D., conducted a comprehensive neuropsychological screening and  found that Wertz had moderate impairment in the ability to interact appropriately with the public based on Wertz's subjective report that she tended to avoid the public.  Dr. Brischetto noted that Wertz had no problems during the session interacting with her or responding appropriately to directions and questions.  Tr. 636.

In March 2004, Wertz told Dr. Brischetto that she felt tense and panicky at times around people and in noisy situations.  Dr. Brischetto diagnosed an Anxiety Disorder, but stated concerns about the credibility of Wertz's symptom reporting.  Tr. 1130.  She did not indicate specific functional limitations in dealing with the public.

The court concludes that the ALJ's RFC assessment reasonably reflected the evidence of Wertz's limitations in social functioning.  The ALJ's conclusion is consistent with Dr. Henry's MRFC and with the record as a whole.  Because the evidence reasonably supports the ALJ's conclusion, it must be upheld.  *Andrews*, 53 F.3d at 1039-40; *Batson v. Barnhart*, 359 F.3d 1190, 1197-98 (9th Cir. 2003).  Even if Wertz's interpretation of the evidence is also rational, it cannot be substituted for that of the ALJ; the ALJ's interpretation must be sustained.  *Andrews*, 53 F.3d at 1039-40.

### B.    Consultative Evaluations of Drs. Calkins and Mozer

Dr. Calkins performed a psychological evaluation in May 2000. This included a clinical interview, mental status examination and psychometric testing. Dr. Calkins noted that Wertz was very focused on what she could not do and claimed to be unable to tolerate tasks that she later was able to do. Low motivation appeared to contribute to her limitations. Tr. 409. Testing showed intellectual function in the average to low average range and Wertz demonstrated the cognitive skills to learn a number of job tasks. She had slow processing speed and slow responses in the interview which suggested that she would have difficulties completing some job tasks in a timely manner. Tr. 411, 414.

Wertz scored in the average range on achievement tests, which Dr. Calkins found consistent with her ability to maintain employment over many years as an adult. Tr. 411-12. Her scores on Trailmaking tests were average, indicating good speed of response and sequencing skills. Tr. 412. She demonstrated good memory skills. Tr. 412-13.

Wertz intentionally omitted many items on the personality inventory, leading Dr. Calkins to conclude that her response validity on testing could not be assured and that her test scores should be viewed with caution. Tr. 413, 415.

Dr. Calkins diagnosed an adjustment disorder that did not appear to include emotional difficulties that would be severe enough to preclude her from working. More significantly for the present purposes, he also diagnosed a cognitive disorder associated with slow speed of response that he believed would impair her ability to finish job tasks in a timely manner. He opined that "Significant accommodation would be necessary at most jobs in order for her to remain

employed.[but she would be] generally able to produce fairly accurate responding if she was given sufficient time to do so." Tr. 414.

Dr. Mozer performed a clinical evaluation without psychometric testing in April 2001. He noted mild cognitive impairment suggested by Wertz's subjective claim that she did not know the correct date and floor of the building she was on. He found that Wertz might have difficulty with complex tasks. Tr. 437-41.

Wertz contends the ALJ improperly rejected Dr. Calkins's opinion that cognitive deficits would make it difficult for Wertz to complete job tasks in a timely manner and would require accommodations in most jobs. She contends the ALJ improperly rejected Dr. Mozer's opinion that she has mild cognitive deficits resulting in slow information processing and difficulty organizing complex tasks.

The ALJ did not expressly reject their opinions. The Commissioner argues that he incorporated their findings into his RFC assessment. The ALJ's RFC assessment precludes all jobs requiring the cognitive ability to perform more than simple 1-2-3 step directions or keep pace in a production line environment. Tr. 36.

The ALJ's RFC assessment is reasonably consistent with the opinions of Drs. Calkins and Mozer. Dr. Calkins did not identify specific job tasks he believed Wertz would have difficulty completing. Nor did he identify the accommodations he felt she would need in a work setting. The ALJ could reasonably infer that Wertz would be most challenged by complex tasks and the speed associated to keep pace in a production line environment. He could reasonably infer that excluding all but simple tasks without a production line pace would be a sufficient accommodation for her cognitive difficulties.

10 - OPINION AND ORDER

The ALJ's RFC assessment is also consistent with the record as a whole. The record reflects significant doubt regarding the existence and severity of Wertz's cognitive deficits. Dr. Mozer's finding of mild cognitive impairment was based on subjective reports that overstated her limitations and exaggerated the accident from which they purportedly arose. Wertz claimed she suffered physical hip, sacrum, vertebrae and head injuries, but the objective evidence shows she did not. Dr. Mozer believed Wertz's subjective claim that she did not know the correct date and floor of the building she was on. He based his finding of mild cognitive problems on that questionable reporting. Nonetheless, the ALJ's RFC assessment is consistent with Dr. Mozer's opinion that Wertz might have difficulty with complex tasks.

In April 2002, Dr. Brischetto opined that Wertz's test scores under represented her true cognitive function. Tr. 631. She found no clear cognitive deficits and attributed the perception of such to sedation from excess medication and secondary gain. Tr. 632. Dr. Brischetto concluded that Wertz's ability to understand, remember and carry out simple instructions was not impaired. Tr. 636. This is consistent with the ALJ's findings.

Gajanan Nilaver, M.D., performed a neurological examination with diagnostic EEG and MRI studies in May 2002. He concluded that Wertz "does not have not have major cognitive defects that I could detect on her exam." Tr. 666.

In March 2004, Dr. Brischetto opined that dramatic exaggeration in Wertz's reporting and unexplained inconsistencies in the psychometric testing left no credible basis for the cognitive symptoms Wertz claimed. Dr. Brischetto believed Wertz was becoming entrenched in the role of a disabled person as a function of manipulative and dependent personality traits, along with secondary gain factors for presenting herself as disabled. Tr. 1129-30.

11 - OPINION AND ORDER

The ALJ is responsible for determining credibility and evaluating the medical evidence. *Edlund v. Massanari,* 253 F.3d at 1156. The ALJ considered all of the medical evidence and made reasonable conclusions about Wertz's credibility. He interpreted the opinions of Dr. Calkins and Dr. Mozer in a reasonable manner that is consistent with the record as a whole. Accordingly, the court may not substitute its judgment or alternate interpretations asserted by Wertz. *Andrews*, 53 F.3d at 1039-40; *Batson v. Barnhart*, 359 F.3d 1190, 1197-98 (9th Cir. 2003). The ALJ did not reject their opinions or commit error with respect to that evidence.

### C.    The Opinion of Dr. Minkanus

Dr. Minkanus was a staff psychiatrist at Cascadia Behavioral Healthcare who saw Wertz at monthly intervals for medication management beginning in March 2002. On January 14, 2003, he wrote a letter including the following statement:

> Her case is complicated by neurological symptoms including problems with memory and concentration, which she relates to a past head injury. At this time her symptoms of depression and anxiety are sufficiently severe that they are impairing her ability to obtain gainful employment in the foreseeable future.

Tr. 1103. Dr. Minkanus also completed a worksheet indicating that Wertz had no ability or poor ability to perform a number of mental aptitudes needed to perform basic work. Tr. 1104-07.

The ALJ found the Cascadia records, including Dr. Minkanus's opinion, entitled to little weight because they were based on Wertz's inaccurate subjective reporting. Tr. 34.

An ALJ can reject a treating physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F3d 947, 957 (9th Cir 2002) quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989); *Lester*

*v. Chater*, 81 F3d 821, 830 (9th Cir 1995). An ALJ can properly reject a physician's disability

opinion that is premised on the claimant's own subjective complaint of disabling symptoms which

the ALJ has properly discounted. *Fair v. Bowen*, 885 F2d 597, 605 (9th Cir 1989); *Tonapetyan v.*

*Halter*, 242 F3d 1144, 1149 (9th Cir 2001).

Dr. Minkanus's opinion is inconsistent with the other psychological opinions in the record,

including those of Drs. Calkins, Mozer, Brischetto and Nilaver. The ALJ found that Wertz's

subjective reporting about the accident, the injuries she sustained and her symptoms were not

credible. Tr. 32-36. Wertz does not challenge that finding.

In summary, Dr. Minkanus's opinion is inconsistent with the opinions of other physicians

and the record as a whole. His inconsistent opinion is based on subjective statements which the ALJ

properly discounted. Accordingly, the ALJ did not err by giving little weight to Dr. Minkanus's

opinion.

## II.    Remand Instructions

As a necessary part of the administrative decision-making process, the agency may reach a

series of interim decisions, including an initial determination, a reconsideration determination, a

hearing decision by an ALJ and a review of that decision by the Appeals Council. 20 C.F.R. §§

404.900, 416.1400. When the claimant has completed all the steps of the administrative review

process, the agency will have made its final decision. Only the final decision is subject to judicial

review. 42 U.S.C. §§ 405(c), 1383(c)(3).

This case proceeded through the administrative process in the usual way and an ALJ issued

a hearing decision on January 2, 2003. That ALJ determined that Wertz retained the RFC to return

to work she had performed in the past. Tr. 91-105.

The Appeals Council vacated that decision and remanded for resolution of two issues. First, the ALJ on remand was to clarify how Wertz could perform duties required by her past work which involved significant contacts with others in light of her limitations in social function as described by Drs. Henry, Calkins and Mozer. Second, the ALJ was to consider new evidence submitted from Wertz's treating psychiatrist and physician. Tr. 116.

In proceedings after the remand, a different ALJ issued a hearing decision on February 7, 2005. Tr. 23-40. He resolved the first issue presented by the Appeals Council by concluding that Wertz could not perform any of her past relevant work. He resolved the second issue by considering all the evidence presented by Wertz. The Appeals Council found no basis for review of the second hearing decision and it became the final agency decision that is now on review before this court. Tr. 12-14.

Wertz seeks reversal on the grounds that the second ALJ failed to comply with the Appeals Council's remand of the first ALJ's decision. The record discloses that the ALJ complied with the remand order. He reviewed the evidence identified in the remand order in context with the record as a whole and concluded that Wertz could not return to her past work. The Appeals Council was satisfied with the ALJ's resolution of the two issues raised in its remand order and found no basis for further review. As described previously, this court has now concluded that the ALJ's evaluation of the evidence also satisfied the standard of review applicable here.

Accordingly, the court concludes that any errors in the first ALJ's decision were corrected in the final decision of the Commissioner. The ALJ's evaluation of the evidence satisfied the Appeals Council's remand instructions, followed correct legal standards and was supported by substantial evidence in the record as a whole.

### III.    Step Five Determination

At step five, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d at 1098; *Andrews v. Shalala*, 53 F.3d at 1043.  Wertz contends the ALJ did not satisfy the burden of proof because the jobs he identified require functional abilities that are precluded by her RFC.

The ALJ identified two examples of occupations that a person with Wertz's RFC and vocational factors could perform: dining room attendant and motel cleaner.  The Commissioner concedes for the purposes of argument that the job of dining room attendant is not a suitable example of work Wertz can do.  It cannot be used to support the ALJ's conclusion that jobs exist in significant numbers in the national economy that Wertz can perform.

Wertz does not assert that the occupation of motel cleaner requires physical or mental abilities exceeding her RFC.  The ALJ found that there are significant numbers of jobs in the regional and national economies in the occupation of motel cleaner.  Tr. 38, 1449.  Accordingly, the ALJ's step five conclusion is supported by substantial evidence.

## <u>ORDER</u>

Based on the foregoing, the ALJ's determination that Wertz does not suffer from a disability and is not entitled an award of benefits under Titles II and XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence.  The Commissioner's final decision is AFFIRMED and this case is DISMISSED.

DATED this __15___ day of February, 2007.

_____/s/_____
John P. Cooney
United States Magistrate Judge